UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KISS,

                                        Plaintiff,

        v.

RAFAEL A. TORRES, *et al.*,

                                        Defendants.

No. 21-CV-10391 (KMK)

OPINION & ORDER

Appearances:

Daniel Kiss
Poughkeepsie, NY
*Pro Se Plaintiff*

Daniel S. Kirschbaum, Esq.
Amanda Yoon, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendant James Schulhoff*

James A. Randazzo, Esq.
Drew W. Sumner, Esq.
Portale Randazzo LLP
White Plains, NY
*Counsel for Defendants Rafael Torres, Town of Hyde Park,*
*Daniel Ferrara, Michael Stallone, Joshua Tucker*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Daniel Kiss ("Plaintiff") brings this Action pro se against Hyde Park Police

Officers Rafael Torres ("Torres"), Daniel Ferrara ("Ferrara"), Michael Stallone ("Stallone"), and

Joshua Tucker ("Tucker"), as well as New York State Trooper James Schulhoff ("Schulhoff,"

and collectively the "Officer Defendants" or the "Officers"); and the Town of Hyde Park ("Hyde

Park," and with the Officer Defendants, the "Defendants").[1]  (*See* Second Am. Compl. ("SAC") (Dkt. No. 71).)  Plaintiff raises claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging violations of his rights under the Fourth and Fourteenth Amendments, and several claims under New York state law—including unlawful detainer, unlawful eviction, conversion, false arrest, unlawful seizure of Plaintiff's person and property, negligence, and intentional and negligent infliction of emotional distress.  (*See* SAC ¶¶ 74–96.)[2]

Before the Court are Schulhoff and the Hyde Park Defendants' respective Motions for Summary Judgment (the "Motions") pursuant to Federal Rule of Civil Procedure 56.  (*See* Schulhoff Not. of Mot. (Dkt. No. 107); Hyde Park Not. of Mot. (Dkt. No. 113).)  For the following reasons, Defendants' Motions are granted.

## I.  Background

The Court has described the factual background and procedural history of this case in prior Opinions.  *See Kiss*, 2024 WL 1210941, at *2–6; *Kiss v. Torres*, No. 21-CV-10391, 2023 WL 2648396, at *1–4 (S.D.N.Y. Mar. 27, 2023).  The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant Motions.

---

[1] Hyde Park, Torres, Ferrara, Stallone, and Tucker will be collectively referred to herein as the "Hyde Park Defendants."  Plaintiff has no remaining claims against the Town of Hyde Park because the Court dismissed Plaintiff's municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *See Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *24 (S.D.N.Y. Mar. 19, 2024).

[2] The Court cites to the ECF-stamped page number at the upper right-hand corner of all documents, unless otherwise noted.

A. Factual Background

The following facts are taken from the Defendants' statements pursuant to Local Rule

56.1. (*See* Def. Schulhoff's 56.1 Statement ("Schulhoff's 56.1") (Dkt. No. 112); Hyde Park

Defs' 56.1 Statement ("Hyde Park's 56.1") (Dkt. No. 116).)[3]  Plaintiff did not file a Rule 56.1

statement but responded to some of Defendants' Rule 56.1 statements in the opposition briefs.[4]

(*See* Pl.'s Opp'n to Schulhoff's Mot. for Summary Judgment ("Pl.'s Schulhoff Opp'n") (Dkt.

---

[3] Local Civil Rule 56.1(a) requires the moving party to submit a "short[] and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id*. 56.1(b).  "If the opposing party then fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted).

[4] Defendants sent the required Local Rule 56.2 Notices to Plaintiff.  (*See* Not. to Pro Se Litigant by Schulhoff (Dkt. No. 111); Not. to Pro Se Litigant by Hyde Park (Dkt. No. 117).)  Plaintiff failed to submit a response to Defendants' 56.1 Statement.  (*See generally* Dkt.)  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested.  *See Brandever*, 2014 WL 1053774, at *2–3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *6–7 (S.D.N.Y. Aug. 29, 2013) (same).  However, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has, "in its discretion[,] opt[ed] to conduct an assiduous review of the [entire] record" in deciding the instant Motion, *Smolen v. Brown*, No. 18-CV-7621, 2023 WL 6199094, at *1 n.1 (S.D.N.Y. Sept. 22, 2023) (citation omitted).

No. 121); Pl.'s Opp'n to Hyde Park Defs' Mot. for Summary Judgment ("Pl.'s Hyde Park Opp'n") (Dkt. No. 122).)[5]

The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation and quotation marks omitted). The facts as described below are in dispute only to the extent indicated.

### 1. Plaintiff's Living Arrangement with the Kenny Family

In June 2019, Sharon Kenny ("Sharon") asked Plaintiff and his wife, Danny Villa Rodriguez ("Rodriguez"), to live at her residence at 4 Potter Bend, Poughkeepsie, New York (the "Residence") under an informal arrangement to help care for Jules Kenny ("Jules"), Sharon's ailing elderly father. (*See* Schulhoff's 56.1 ¶ 4; *see also* Kirschbaum Decl. in Supp. of Mot. ("Kirschbaum Decl.") Ex. B ("Pl.'s Dep. Tr.") 23:21–24:22 (Dkt. No. 109).) Plaintiff and Sharon were once engaged. (*See* Schulhoff's 56.1 ¶ 4.) Plaintiff and Rodriguez were compensated for taking care of Jules. (Pl.'s Dep. Tr. 36:6–22). Debra Rubin ("Rubin"), Sharon's stepsister, also paid Plaintiff and Rodriguez for taking care of Jules; the payments were reported as W-2 income. (Kirschbaum Decl. Ex. C ("Rubin Dep. Tr.") 56:22–57:19.)

Plaintiff and Rodriguez occupied an upstairs bedroom called "Daniel's Room." (*See* Schulhoff's 56.1 ¶ 6.) That room had a walk-in closet shared with Sharon where she kept clothes. (*See id.* ¶ 10.) Sharon also kept other belongings in Daniel's Room, including her desk, dresser, and bookshelves. (*Id.* ¶ 11.)

---

[5] Having closely reviewed Plaintiff's opposition briefs, the Court notes that they are virtually identical to one another. (*Compare* Pl.'s Schulhoff Opp'n, *with* Pl.'s Hyde Park Opp'n.) Thus, for the sake of clarity and concision, the Court will generally cite only to Plaintiff's Opposition to Schulhoff's Motion for factual propositions.

On December 17, 2019, Sharon died in a skiing accident. (*See id.* ¶ 16; Pl.'s Dep. Tr. 42:11–17.) Rubin asked Plaintiff and his wife to continue the arrangement of taking care of Jules by staying at the Residence; she continued paying them. (Schulhoff's 56.1 ¶ 16.) Under the family trust, Rubin was a trustee for Jules' property, and his personal possessions were to be left to his beneficiaries: Janet, another sister, and grandchildren. (*Id.* ¶ 18.) Janet warned Plaintiff not to remove any objects in the Residence belonging to the family, as the house was expected to go through probate. (*Id.* ¶ 17.) On January 29, 2020, the family moved Jules to a senior care facility. (*Id.* ¶ 20.) Rubin stopped paying Plaintiff and he sought unemployment benefits. (Rubin Dep. Tr. 32:22–33:4.) Jules died at the facility on February 13, 2020. (Schulhoff's 56.1 ¶ 22.)

### 2. Eviction on February 13, 2020

On February 13, 2020, Janet called the police and reported that she was the executor of Jules' estate with legal ownership of the property. (*Id.* ¶ 23.) She stated that she saw security camera footage of her father's caregivers removing family property without permission. (*Id.*) In response, Officer Defendants were dispatched to the Residence, encountering Plaintiff and his wife around 2:15 p.m. (*Id.* ¶¶ 24–25.) Plaintiff informed Defendants he was a tenant, (*id.* ¶ 26), but they ordered him and his wife to remain in the kitchen while Defendants searched the Residence, (*see id.* ¶ 27). Due to the unusual nature of the dispute—between an absentee landlord and former caregivers claiming tenancy—Defendant Schulhoff contacted the New York State Police ("NYSP") sergeant on duty. (*See id.* ¶¶ 28–29.) The sergeant advised the officers to confirm that nothing had been taken from the Residence, to remove the alleged intruders, and to secure the property. (*See id.*)

Defendant Schulhoff went outside with Rodriguez to search her car; they came back after five minutes.  (*See* Randazzo Decl. in Supp. of Mot. ("Randazzo Decl.") Ex. B ("Pl.'s 50-h Tr.") 33:7–34:16 (Dkt. No. 115-2).)[6]  Defendants also searched Plaintiff's van and found power tools. (Schulhoff's 56.1 ¶ 32.)  Defendant Schulhoff called Janet to confirm ownership, and she asked him to keep the tools at the Residence so she could review them.  (*Id.* ¶¶ 32–33.)  Defendants then ordered Plaintiff to place the tools in the garage.  (*Id.* ¶¶ 34–35.)  They took the keys to the Residence from Plaintiff and his wife, locked the Residence, and warned them not to return unless Janet was present.  (*Id.*)

Following the eviction, the house was sold in about September 2020.  (*Id.* ¶ 42.)  A real estate agent told Plaintiff that certain items in the Residence were thrown out or donated.  (*Id.*) A real estate agent returned certain items—including laundry, a laptop, glasses, shoes, and $150 in cash—to Rodriguez.  (*Id.* ¶ 43.)  Plaintiff called the NYSP and Hyde Park Police Department but was told to pursue remedies such as going to small claims court.  (*Id.* ¶¶ 39–40.)  Plaintiff did not initiate an Article 78 proceeding or a small claims court action to recover or seek compensation for his property.  (*Id.* ¶¶ 47–48.)

B.  Procedural History

Plaintiff filed his Amended Complaint on May 25, 2023.  (*See generally* Am. Compl. (Dkt. No. 39).)  On March 19, 2024, the Court issued an Opinion & Order granting in part and denying in part Defendants' second Motions to Dismiss.  (Mar. Op. & Order ("March 2024 Opinion") (Dkt. No. 66).)  Plaintiff filed his Second Amended Complaint on April 15, 2024. (*See* Second Am. Compl. ("SAC") (Dkt. No. 71).)  Defendants filed their instant Motions on

---

[6] The Court cites to the page and line number of the transcript document here, not the ECF-stamped page number at the upper right-hand corner of the transcript.

December 18, 2024.  (*See* Schulhoff Not. of Mot.; Schulhoff Mem. of Law in Supp. of Mot. ("Schulhoff Mem.") (Dkt. No. 110); Hyde Park Not. of Mot.; Hyde Park Mem. of Law in Supp. of Mot. ("Hyde Park Mem.") (Dkt. No. 114).)  Defendants filed the requisite Local Rule 56.2 notice that same day.  (*See* Dkt. No. 111; Dkt. No. 117.)  Plaintiff submitted his Opposition papers on January 28, 2025.  (*See* Pl.'s Schulhoff Opp'n; Pl.'s Hyde Park Opp'n.)  Defendants replied on February 21, 2025.  (*See* Hyde Park Reply Mem. of Law in Supp. of Mot. ("Hyde Park Reply Mem.") (Dkt. No. 126); Schulhoff Reply Mem. of Law in Supp. of Mot. ("Schulhoff Reply Mem.") (Dkt. No. 127).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Reyes v. Upfield US Inc.*, No. 22-CV-6722, 2025 WL 786656, at *5 (S.D.N.Y. Mar. 12, 2025) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [her] favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).

"The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10, 2023) ("Summary

judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks omitted)); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (stating that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law). "However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (clarifying that when the burden of proof at trial falls on the non-moving party, the movant typically meets its burden by identifying a lack of evidence on an essential element of the non-movant's claim, and in response, the non-moving party must present admissible evidence that creates a genuine factual issue for trial to prevent summary judgment).

Importantly, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-*

*Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y.

Oct. 12, 2023) (noting that the non-movant needs to show more than some metaphysical doubt as

to the material facts to defeat a summary judgment motion), "and cannot rely on the mere

allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp.

3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Kollias v. Univ. of Rochester*,

No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for

summary judgment is properly supported by documents or other evidentiary materials, the party

opposing summary judgment may not merely rest on the allegations or denials of his pleading."

(quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

 "On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law."  *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at

*12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health

& Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)).  "At this stage, 'the role of the court is not

to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"

*U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept.

28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)).

Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'"

*Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26,

2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004)

(quoting *Celotex Corp.*, 477 U.S. at 323–24)).

 When ruling on a motion for summary judgment, a district court should "consider only

evidence that would be admissible at trial."  *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL

6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am.*,

*Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012)); *accord* Fed. R. Civ. P.56(c)(4); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016); *accord Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Janczuk v. United States*, No. 24-CV-3718, 2024 WL 4483225, at *1 (S.D.N.Y. Oct. 7, 2024); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *7 (S.D.N.Y. Sept. 9,

2024); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (noting that "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment"); *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (explaining that "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment").

　　B.  Analysis

　　Defendants assert that summary judgment is warranted as the record conclusively establishes that they did not violate Plaintiff's constitutional rights.  (Schulhoff Mem. 7–8; Hyde Park Mem. 5.)  Plaintiff raises numerous arguments in opposition, which the Court will address only as necessary to decide the Motions.

　　　　1.  Fourteenth Amendment Claims

　　The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  The Due Process Clause thus "bars arbitrary, wrongful government actions, and guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property."  *Wiesner v. Rosenberger*, No. 98-CV-1512, 1998 WL 695927, at *3 (S.D.N.Y. Oct. 6, 1998) (citing *Daniels v. Williams*, 474 U.S. 327, 330–32 (1986)); *accord Polardo v. Adelberg*, No. 22-CV-2533, 2023 WL 2664612, at *11 (S.D.N.Y. Mar. 28, 2023).  "The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'"  *Patterson v. City of*

*Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970));

*accord Smalls v. N.Y.C. Emps.' Ret. Sys.*, No. 18-CV-5428, 2020 WL 5525746, at *4 (S.D.N.Y.

Sept. 15, 2020).  "To plead a violation of procedural due process, . . . a plaintiff must first

identify a property right, second show that the government has deprived him of that right, and

third show that the deprivation was effected without due process."  *Akinde v. N.Y.C. Health &

Hosp. Corp.*, No. 16-CV-8882, 2019 WL 4392959, at *5 (S.D.N.Y. Sept. 13, 2019) (quoting *J.S.

v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013)).  "The appropriate process depends on the balancing

of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk

of erroneous deprivation of such interest through the procedures used;' and (3) 'the

Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail.'"  *Panzella v. Sposato*, 863

F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### a.  Plaintiff's Removal from the Residence

Plaintiff argues that he was a tenant with due process rights when removed from the

Residence.  (*See* Pl.'s Schulhoff Opp'n 1–2.)  Defendants argue that Plaintiff was only a licensee

and thus not entitled to any process.  (*See* Schulhoff Mem. 16–18; Hyde Park Mem. 11–12.)

"Property interests are not created by the Constitution; rather, 'they are created and their

dimensions are defined by existing rules or understandings that stem from an independent source

such as state law-rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits.'"  *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir.

2002) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Thus, the

Court first considers whether Plaintiff was a tenant, rather than a licensee, because his status is

dispositive of whether he has the requisite property interest in the Residence to state a procedural

due process claim.  *See Pelt v. City of New York*, No. 11-CV-5633, 2013 WL 4647500, at *8 (E.D.N.Y. Aug. 28, 2013) ("Under New York law, it is well settled that a licensee acquires no possessory interest in property." (citation and quotation marks omitted) (collecting cases)); *Gladsky v. Sessa*, No. 06-CV-3134, 2007 WL 2769494, at *8 (E.D.N.Y. Sept. 21, 2007) ("It has long been the rule in New York that a licensee, as opposed to a tenant . . . , cannot maintain an action for wrongful ejection." (quoting *Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 334 (S.D.N.Y. 1994))).

A licensee has been defined as "[a] person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land but who goes on the land for his own purpose rather than for any purpose or interest of the possessor."  *Gladsky*, 2007 WL 2769494, at *8 (alteration in original) (quoting Black's Law Dictionary 921 (6th Ed. 1990)); *see also id*. (noting "[t]his definition is consistent with [the interpretation] employed by New York courts" (citation and quotation marks omitted) (collecting cases)); *Nauth v. Nauth*, 981 N.Y.S.2d 266, 268 (Civ. Ct. 2013) ("While no explicit definition of 'licensee' is provided [in the relevant section of New York Real Property Actions and Proceedings Law], a licensee in [the] landlord[-]tenant context is generally defined as someone who is granted permission, express or implied, by the owner to use and/or occupy the subject premises." (citation omitted)).  A license is "cancellable at will, and without cause."  *Am. Jewish Theatre, Inc. v. Roundabout Theatre Co.*, 610 N.Y.S.2d 256, 257 (App. Div. 1994) (citation omitted).  Accordingly, licensees do not have a cognizable property interest in the continued occupancy of a property.  *See Pelt*, 2013 WL 4647500, at *8–9.

As noted in the Court's prior two Opinions, *see Kiss*, 2024 WL 1210941, at *10; *Kiss*, 2023 WL 2648396, at *7, New York courts have explained that "the transfer of absolute control

and possession is what differentiates a lease from a license . . . [w]hereas a license connotes use or occupancy of the grantor's premises, a lease grants exclusive possession of designated space to a tenant, subject to rights specifically reserved by the lessor," *Am. Jewish Theatre*, 610 N.Y.S.2d at 257 (citation omitted); *Nextel of N.Y., Inc. v. Time Mgmt. Corp.*, 746 N.Y.S.2d 169, 170 (App. Div. 2002) ("The central distinguishing characteristic of a lease is the surrender of absolute possession and control of property to another party for an agreed-upon rental." (citations and quotation marks omitted)).  While a tenant must be provided with due process pursuant to N.Y. Real Prop. Acts. Law § 711, a licensee may be "peaceably exclude[d] . . . from [a dwelling] without resort to legal process."  *Coppa v. LaSpina*, 839 N.Y.S.2d 780, 783 (App. Div. 2007) (citations omitted); *see also Smith v. County of Nassau*, No. 10-CV-4874, 2015 WL 1507767, at *8 (E.D.N.Y. Mar. 31, 2015) (holding that the plaintiff could not "sustain a due process claim based on his eviction" because "his status as a licensee conferred no cognizable property interest"), *aff'd*, 643 F. App'x 28 (2d Cir. 2016) (summary order); *Visken v. Oriole Realty Corp.*, 759 N.Y.S.2d 523, 525 (App. Div. 2003) ("Since the plaintiff was a mere licensee . . . [the defendant], as owner, had an owner's common-law right to oust her without legal process." (citation omitted)).

Most of the Parties' arguments miss the mark.  Plaintiff contends that he was a tenant because he exercised exclusive control over at least Daniel's room.  (Pl.'s Schulhoff Opp'n 1.) Defendants respond that Plaintiff was a licensee because he did not exercise exclusive control over even Daniel's room, illustrated by Sharon keeping many of her belongings in Daniel's room.  (*See* Schulhoff Mem. 16–18; Hyde Park Mem. 11–14.)  But whether Plaintiff was a tenant or a licensee in the past—such as when he was sharing the Residence with Sharon—is irrelevant. The relevant question is Plaintiff's status on the date of the eviction.

The Court finds that the undisputed evidence establishes that Plaintiff was a not a tenant when he was evicted.  Under New York law, "[o]ccupancy incident to employment is recognized as a circumstance in which no landlord-tenant relationship exists[.]"  *85 EP LLC v. Cano*, 124 N.Y.S.3d 635, 638 (Civ. Ct. 2020).  Despite the informal arrangement, Rubin paid Plaintiff as a W-2 employee.  (Rubin Dep. Tr. 57:3–19.)  And Plaintiff's occupancy at the Residence was incidental to his employment of caring for Jules.  (*See* Pl.'s Dep. Tr. 28:1–30:5.).  After Jules went to the senior care facility, Rubin stopped paying Plaintiff, who then sought unemployment benefits.  (Rubin Dep. Tr. 32:22–33:4.)  Because Plaintiff's occupancy of the Residence was incidental to his employment of taking care of Jules, his "occupancy rights terminated upon the end of [his] employment."  *Bennardo v. Searchwell*, 43 N.Y.S.3d 878, 880 (Dist. Ct. 2016).  Thus, Plaintiff was not a tenant at the time of his eviction and was not entitled to due process protections.  *Cf. id.* ("A superintendent who occupies an apartment purely as an incident of employment is a licensee and must vacate the unit upon the termination of his or her employment[.]"); *Cent. Harlem Mut. Hous. LP v. Whitfield*, 33 Misc. 941 N.Y.S.2d 536 (Table), 2011 WL 6347837, at *2 (Civ. Ct. 2011) ("[I]f the occupancy of the apartment is incidental to employment, a landlord-tenant relationship generally does not exist."); *De Villar v. City of New York*, 628 F. Supp. 80, 83 (S.D.N.Y. 1986) ("Because the plaintiffs had no property interest in the apartments they were living in [incident to their employment as superintendents], their evictions did not implicate the Due Process Clause of the Fourteenth Amendment.").

### b.  Plaintiff's Personal Property

Plaintiff states that Defendants violated his right to due process by depriving him of personal property.  (*See* Pl.'s Schulhoff Opp'n. 1–2.)  Defendants respond that Plaintiff is not

entitled to pre-deprivation process and had adequate post-deprivation remedies.  (*See* Schulhoff Mem. 18–23; Hyde Park Mem. 15–16.)

As noted in the Court's prior two Opinions, *see Kiss*, 2024 WL 1210941, at *11–12; *Kiss*, 2023 WL 2648396, at *8–9, "[w]hen reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees," *Hellenic Am. Neighborhood Action Comm.* (*HANAC*) *v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing, inter alia, *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)); *accord Joseph v. Castillo*, No. 20-CV-3957, 2022 WL 4485061, at *4 (E.D.N.Y. Sept. 27, 2022).  With respect to claims based on random, unauthorized acts by state employees, "the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy."  *HANAC*, 101 F.3d at 880 (citing *Hudson*, 468 U.S. at 531, 533).  In other words, where a state employee's random, unauthorized act makes "a pre-deprivation hearing . . . impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter."  *Stokes v. City of Mount Vernon*, No. 11-CV-7675, 2012 WL 3536461, at *9 (S.D.N.Y. Aug. 14, 2012) (quoting *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984)), *modified in part on reconsideration*, 2012 WL 6691078 (S.D.N.Y. Dec. 17, 2012).

As to claims based on established state procedures, such conduct occurs when, for example, it is "pursuant to a statute, code, regulation, or custom," or is the result of a decision made by a high-ranking official with "final authority over significant matters."  *See Viteritti v. Inc. Village of Bayville*, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (quoting *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010)).  "When the deprivation

occurs in the more structured environment of established state procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880 (citing *Hudson*, 468 U.S. at 532). Rather, where a plaintiff is deprived of property "pursuant to an established state procedure, [] some pre-deprivation process [is] required." *Teichmann v. N.Y.C. Emps.' Ret. Sys.*, No. 21-CV-5082, 2022 WL 4237110, at *5 (S.D.N.Y. Sept. 14, 2022); *see also Panzella*, 863 F.3d at 218 (listing the factors courts must balance when determining how much process is due under given circumstances and quoting *Mathews*, 424 U.S. at 335).

Plaintiff concedes that Defendants were not acting pursuant to state procedures by failing to respond to their arguments in support of their Summary Judgment Motion. "A party may be deemed to concede an argument by failing to address it in an opposition brief." *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022). To begin, Plaintiff did not even allege that Defendants acted pursuant to state procedure. At the motion to dismiss stage, the Court liberally construed Plaintiff's argument—that Defendants' conduct suggested adherence to some existing law enforcement practice—to be plausible. *Kiss*, 2024 WL 1210941, at *12. But Plaintiff's briefs failed to respond to Defendants' arguments about the lack of state procedure in connection with the instant Motions. (*See generally* Pl.'s Schulhoff Opp'n; Pl.'s Hyde Park Opp'n.) "[T]he Court will deem an argument waived, where a party's argument is notably underdeveloped." *Roman v. City of Mount Vernon*, No. 21-CV-2214, 2023 WL 8719968, at *14 (S.D.N.Y. Dec. 18, 2023).

Even on the merits, assuming arguendo that Plaintiff did not concede, Defendants did not act pursuant to state procedures. When asked at his deposition, Plaintiff could not point to any evidence of state procedures pursuant to which Defendants were acting. (Pl.'s Dep. Tr. 118:17–

121:3.)  Defendants—as police officers and a New York State Trooper—were lower-level officials, not policymakers.  *Cf. Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *21 (S.D.N.Y. Sept. 28, 2023) (distinguishing between officers and high-ranking officials with policymaking authority).  Thus, no pre-deprivation process was required because Defendants were not acting based on state procedures.  *See Abdullah v. NYPD 30th Precinct*, No. 24-CV-137, 2024 WL 325385, at *4 (S.D.N.Y. Jan. 29, 2024) ("Because the government cannot predict precisely when a government official's random and unauthorized deprivation of a person's property interest will occur, it would be impossible to provide meaningful due process before the deprivation of the property interest."); *Anderson v. Townsend*, No. 21-CV-3569, 2021 WL 5359681, at *5 (S.D.N.Y. Nov. 17, 2021) ("Predeprivation process is not constitutionally required in situations requiring quick action by the State or where the impracticality of providing any meaningful predeprivation process requires that state action be assessed some time after the initial taking." (internal quotation marks and citation omitted)).

Next, the Court considers Plaintiff's claims based on random, unauthorized acts by state employees.  They also fail because the post-deprivation remedies available satisfied due process.  Plaintiff had a panoply of remedies he could have pursued to recover his personal property.  First, he could have initiated an Article 78 proceeding.  *See* N.Y. C.P.L.R. §§ 7801–7806; *Abdullah*, 2024 WL 325385, at *4 (affirming that "property wrongfully seized by officials during a search recoverable by a state replevin action or a state proceeding brought under Article 78 of the New York Civil Practice Law and Rules"); *Miller v. Bazan*, No. 13-CV-993, 2015 WL 339533, at *4 (N.D.N.Y. Jan. 26, 2015) ("Article 78 proceedings have been used to recover property that police officers confiscated during a search or arrest.").  The Second Circuit has "held on numerous occasions that an Article 78 proceeding is a perfectly adequate

post[-]deprivation remedy." *Gentleman v. State Univ. of New York Stony Brook*, No. 21-1102, 2022 WL 1447381, at *2 (2d Cir. May 9, 2022) (summary order) (citing *HANAC*, 101 F.3d at 881); *see also Lerer v. Canario*, No. 19-CV-4568, 2020 WL 1974212, at *6 (S.D.N.Y. Apr. 23, 2020). Second, Plaintiff could have brought a Court of Claims action. "[T]he Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'" *Valde-Cruz v. Russo*, No. 20-CV-9240, 2024 WL 809903, at *8 (S.D.N.Y. Feb. 27, 2024) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)). Third, Plaintiff could have brought state law causes of action. "Courts in the Second Circuit have routinely held that a plaintiff has an adequate post-deprivation state remedy when he can bring a common law tort claim (such as replevin, conversion, or negligence) in New York courts for the return of his property." *Norman v. City of New York*, No. 20-CV-5560, 2022 WL 3354707, at *4 (S.D.N.Y. Aug. 12, 2022) (collecting cases). Plaintiff did not pursue any of these possible remedies. (Schulhoff's 56.1 ¶¶ 47–48.) Regardless, because Plaintiff had adequate post-deprivation remedies, Defendants' Motions are granted against Plaintiff's personal property due process claims.

### 2. Fourth Amendment Claim

The Court next considers the Fourth Amendment claim against Hyde Park Defendants. (*See* SAC ¶¶ 81–88; Pl.'s Hyde Park Opp'n 9.)

The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "A search occurs when the Government acquires information by either physically intruding on persons, houses, papers, or effects, or otherwise

invading an area in which the individual has a reasonable expectation of privacy." *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014) (quotation marks and citation omitted), *on reh'g en banc*, 824 F.3d 199 (2d Cir. 2016). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *Id.* "The Fourth Amendment's warrant requirement protects one's privacy interest in home or property. Absent exigent circumstances or some other exception, [law enforcement officials] must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy." *United States v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000). Similarly, to be valid, a "warrantless seizure must meet one of the recognized exceptions to the [F]ourth [A]mendment's warrant requirement." *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) (quotation marks and citation omitted).

The Supreme Court has "uniformly [] held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *El-Nahal v. Yassky*, 835 F.3d 248, 253 n.2 (2d Cir. 2016) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "Thus, a Fourth Amendment search[] . . . does not occur unless the search invades an object or area [in which] one has a subjective expectation of privacy that society is prepared to accept as objectively reasonable." *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (alterations in original) (quotation marks omitted) (quoting *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008)).

"A [plaintiff] can demonstrate that his . . . legitimate expectation of privacy has been infringed by showing that he owns the premises or property subjected to search, or by showing that he occupies and has dominion and control over the premises or property by leave of the

owner." *Gill v. City of New York*, No. 15-CV-5513, 2017 WL 1097080, at *5 (E.D.N.Y. Mar. 23, 2017) (alterations and quotation marks omitted) (quoting *United States v. Sanchez*, 635 F.2d 47, 63–64 (2d Cir. 1980)); *Lagasse v. City of Waterbury*, No. 09-CV-391, 2011 WL 2709749, at *9–10 (D. Conn. July 12, 2011) (finding trespasser had no reasonable expectation of privacy and therefore could not object to warrantless entry). However, an explicit property interest is not always necessary, as, for example, "a guest [who] has permission to use [a] [home], is given a key, and uses the [home] in the owner's absence" may have a reasonable expectation of privacy, "even though no property interest exists." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (citation omitted). The Second Circuit has also explained that "[w]hether [an individual] qualifie[s] as a tenant or sublessee is not determinative. Possessory interests defined in the common law, while sometimes helpful, contain distinctions that are largely historical and do not control the Fourth Amendment inquiry." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 266 (1960)).

The Court already found in its prior Opinion that Plaintiff had a reasonable expectation of privacy in the Residence. *See Kiss*, 2024 WL 1210941, at *14; s*ee also United States v. Ray*, 541 F. Supp. 3d 355, 380 (S.D.N.Y. 2021) ("A defendant can establish that he had a legitimate expectation of privacy with respect to a home sufficient to invoke Fourth Amendment rights 'by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner.'" (quoting *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005))).

In the SAC, Plaintiff alleged that Officer Defendants violated his Fourth Amendment rights when they "seized Plaintiff and restricted his liberty, when he was peacefully occupying his own home" on February 13, 2020. (SAC ¶¶ 81–88.) At the motion to dismiss stage, the

Court construed "Plaintiff's claim to be that the Officer Defendants unlawfully detained him during their search of the Residence." *Kiss*, 2024 WL 1210941, at *17.[7]  The Court then proceeded to dismiss all Fourth Amendment claims against Defendants except the Temporary Detention claim against Hyde Park Defendants. *See id.* at *14–20.  Hyde Park Defendants did not move to dismiss that claim at the motion to dismiss stage, *see id.*, but they belatedly do now, (*see* Hyde Park Mem. 7–11).

As the Court noted in *Kiss*, 2024 WL 1210941, at *18, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention . . . [,]'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 n.19 (1981)).  The Supreme Court has explained that, in a detention incident to a lawful search of a house, "the detention of an occupant is surely less intrusive than the search itself," and that this "incremental intrusion" is outweighed by "legitimate law enforcement interests that provide substantial justification for detaining an occupant," such as "preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search." *Id.* (quotation marks omitted) (quoting *Summers*, 452 U.S. at 701–03).  Accordingly, courts have consistently held that law enforcement officers may temporarily detain individuals incident to otherwise lawful searches without violating the Fourth Amendment. *See, e.g.*, *B. v. City of New York*, No. 14-CV-1021, 2016 WL 4530455, at *9 (E.D.N.Y. Aug. 29, 2016) ("Officers may . . . 'detain the occupants of the premises while a proper search is conducted[.]'" (quoting *Summers*, 452 U.S. at 705)); *see also United States v. Whitlock*, No. 20-CR-17, 2021 WL 1439846, at *7 (D. Vt. Apr. 16, 2021)

---

[7] The Court's prior opinion dealt with the Amended Complaint, but the Fourth Amendment claim in the SAC is virtually identical to the claim in the Amended Complaint. (*Compare* Am. Compl. ¶¶ 73–80, *with* SAC ¶¶ 81–88.)

(concluding that a criminal defendant could "be lawfully detained during the search [of a car]" where "[t]he smell of marijuana established probable cause for federal law enforcement's search of the [car] under the automobile exception [to the Fourth Amendment warrant requirement]"); *Foster v. McCabe*, No. 19-CV-843, 2020 WL 2840060, at *6–8 (W.D.N.Y. June 1, 2020) (relying on *Muehler* and *Summers* and concluding that, because the defendants were "entitled to qualified immunity as to the search, they are also entitled to qualified immunity . . . as to the detentions during the search" where the defendants searched a plaintiff-parolee's residence without a warrant for four hours "during which time both [p]laintiffs were required to sit at a table, and [one plaintiff] was handcuffed"); *Crismale v. Reilly*, No. 13-CV-470, 2014 WL 3738151, at *1 (D. Conn. July 29, 2014) (concluding that the plaintiff's temporary detention was reasonable under the Fourth Amendment where the plaintiff was "detained outside in his boat yard for over an hour" by the defendant-officer "who was investigating a complaint that [the] plaintiff had illegally harvested shellfish"); *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 612 (S.D.N.Y. 2013) (explaining that "any detention incident to the lawful search of [the plaintiff's] vehicle [could not] give rise to a Fourth Amendment violation").

Plaintiff's temporary detention claim against the Hyde Park Defendants fails for the same reasons it failed against Defendant Schulhoff. Despite the Court having dismissed an identical claim against Schulhoff—and the claims stemmed from the same incident—Plaintiff made no attempt to salvage the surviving claim by distinguishing the conduct of the Hyde Park Defendants from that of Defendant Schulhoff. (*See generally* SAC; Pl.'s Hyde Park Opp'n.) Plaintiff's temporary detention at the residence was reasonable under the Fourth Amendment for two reasons. First, Hyde Park Defendants were conducting a lawful search of the Residence under Janet's apparent authority, so the investigative detention of Plaintiff during that search was

reasonable under the Fourth Amendment. *See Kiss*, 2024 WL 1210941, at *18; *United States v. Williams*, No. 12-CR-6152, 2015 WL 429087, at *18 (W.D.N.Y. Feb. 2, 2015) (concluding— where law enforcement officers conducted a warrantless search of an apartment—that the temporary detention of a criminal defendant was permissible "during the sweep of the apartment and pending [an] immediate further investigation" and collecting cases), *report and recommendation adopted*, 2015 WL 3454430 (W.D.N.Y. May 29, 2015).  Second, Hyde Park Defendants had reasonable suspicion to temporarily detain Plaintiff in the Residence's living room.  "Beginning with *Terry v. Ohio*, 392 U.S. 1 [(1968)], the [Supreme] Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 185 (2004).  "The reasonable suspicion standard is 'not high' and is 'less demanding than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity *may* be afoot.'" *United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018) (emphasis in original) (quoting *United States v. Singletary*, 798 F.3d 55, 60 (2d Cir. 2015)).  Notably, "[c]onduct that is as consistent with innocence as with guilt may provide the basis for reasonable suspicion where there is some indication of possible illicit activity." *Id.* (citing *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008)).  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Here, Hyde Park Defendants arrived at the Residence in response to Janet's reports that Plaintiff was removing property without permission.  (Hyde Park's 56.1 ¶ 28.)  Upon arriving at

the Residence to investigate, Hyde Park Defendants encountered Plaintiff.  (*Id.* ¶¶ 34–37.)

Considering these facts, it was certainly reasonable for Hyde Park Defendants to suspect

"criminal activity *may* be afoot."  *Santillan*, 902 F.3d at 56 (emphasis in original) (citation

omitted).  Insofar as Plaintiff maintains that the Hyde Park Defendants failed to adequately

consider his claims of innocence, "[a] determination that reasonable suspicion exists[] . . . need

not rule out the possibility of innocent conduct."  *United States v. Arvizu*, 534 U.S. 266, 270

(2002) (citing *Wardlow*, 528 U.S. at 125).

To be sure, "an investigative detention must be temporary and last no longer than is

necessary to effectuate the purpose of the stop."  *Brush v. Old Navy LLC*, 687 F. Supp. 3d 452,

484 (D. Vt. 2023) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  Plaintiff's submissions,

however, provide no legal or factual basis from which to conclude that his detention lasted too

long.  Rather, Plaintiff admits that Schulhoff went outside with his wife to search her car and

came back after five minutes.  (*See* Pl.'s 50-h Tr. 33:7–34:16.)[8]  And Plaintiff fails to allege any

detail about the total time that elapsed between Defendants' arrival and their eviction of Plaintiff.

The Court thus dismisses Plaintiff's Fourth Amendment claim relating to his detention at

the Residence against the Hyde Park Defendants.[9]

---

[8] The Court cites to the internal page and line number of the transcript document here, not
the ECF-stamped page number at the upper right-hand corner of the transcript.

[9] In light of the holdings herein, the Court need not consider Defendants' claims of
qualified immunity.  *Cf. Est. of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 432 n.10
(S.D.N.Y. 2017) ("As the Court finds that Plaintiffs have failed to state a claim for violation of
their constitutional rights, the Court declines to consider Defendants' arguments that they are
entitled to qualified immunity.").

3.  <u>State Claims</u>

Plaintiff raises several claims under New York state law, including unlawful detainer, unlawful eviction, conversion, false arrest, unlawful seizure of Plaintiff's person and property, negligence, and intentional and negligent infliction of emotional distress.  (SAC ¶¶ 94–96.)

As noted in the Court's prior Opinion, *Kiss*, 2023 WL 2648396, at \*15, where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims, *see* 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and internal quotation marks omitted).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (internal quotation marks omitted)); *see also Erie Grp. LLC v. Guayaba Capital, LLC*, 110 F. Supp. 3d 501, 511 n.68 (S.D.N.Y. 2015) (same).

The Court finds nothing that distinguishes this Action from "the usual case."  The Court has granted Defendants' Motions against all of Plaintiff's federal claims.  *See Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at \*1

(E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss).  And none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—militates against such dismissal.  484 U.S. at 350 n.7.  Thus, the Court grants Defendants' Motions against the state claims.

### III. Conclusion

For the foregoing reasons, Defendants' Motions are granted.  The Clerk of the Court is respectfully directed to mail this Opinion and Order to Plaintiff.  The Clerk also is directed to terminate the pending motions, (Dkt. Nos. 107, 113), enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:    September 17, 2025
      White Plains, New York

                              _____
                                  KENNETH M. KARAS
                                United States District Judge